IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEBRA K. GIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-645-MHT-WC |
| | ) | |
| WILSON, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION

On September 4, 2015, Debra K. Gibbs ("Plaintiff") filed a complaint (Doc. 1) alleging, in one count, that Defendants "negligently and/or wantonly" caused her to sustain injuries in a fall on the premises of the Holiday Inn in Dothan, Alabama. Plaintiff was a registered guest at the Holiday Inn. Defendants are Wilson, LLC, the Limited Liability Company that owns and operates the property, James R. Wilson, an individual, and Holiday Hospitality Franchising, LLC ("HHF"), the licensor of the Holiday Inn brand who contracted with Wilson, LLC, for the purposes of opening and operating the Holiday Inn in Dothan. Presently before the court is the Motion for Summary Judgment (Doc. 33) filed by all Defendants, as well as separate Motions for Summary Judgment (Docs. 35 & 37) filed by Defendants James R. Wilson and HHF. Plaintiff has filed a response in opposition (Doc. 42) to the motion filed by all Defendants, and Defendants have filed a reply (Doc. 44). However, Plaintiff has not responded to the separate motions filed by James R. Wilson and HHF, and her time for doing so has expired. Thus, all motions are fully briefed and

are ripe for recommendation to the District Judge.  For the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that the motion filed on behalf of all Defendants (Doc. 33) be GRANTED in part and DENIED in part, and that the separate motions filed by Defendants James R. Wilson (Doc. 35) and HHF (Doc. 37) be GRANTED.

## I.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Only disputes about material facts will preclude the granting of summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Vehicleriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

3

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[t]he mere existence of a 'scintilla' of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In other words, "the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009). In this context, "substantial evidence" means evidence of such a weight and quality that "'reasonable people, in the exercise of impartial judgment, might reach differing conclusions[.]'" *Danow v. Borack*, 346 F. App'x 409, 410 (11th Cir. 2009) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)).[1] Although the court thus is required to closely examine the evidence introduced in favor and against the motion for summary judgment, the court must also guard against

---

[1] In this respect, federal procedural law governing summary judgment is similar to that of Alabama, whose substantive law governs the parties' dispute in this diversity action. *See* Ala. Code § 12-21-12(a) ("In all civil actions brought in any court of the State of Alabama, proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts."); *id.* ("Substantial evidence shall mean evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven.").

usurping the role of the jury as the ultimate finder of fact. *See Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.'").

## III.   STATEMENT OF FACTS

The basic facts of this matter are largely undisputed. On September 15, 2013, Plaintiff and her husband were registered guests at the Holiday Inn in Dothan. They checked into the hotel on September 14, 2013, and, after spending the evening at an electronic gaming facility, returned to the hotel at approximately 2:00 a.m. on September 15. The parties appear to agree that the ambient temperature at that time was approximately seventy-one degrees. As Plaintiff and her husband were walking toward the front entrance of the hotel, Plaintiff was very slightly trailing her husband. There were lights affixed at various points to the covering over the entryway, and light emanating from inside the hotel provided additional illumination. Plaintiff and her husband were talking as they walked. Plaintiff's husband was looking in the direction of the lobby area because that was their destination and, compared to the area outside the door, it was brightly lit. Plaintiff, who was wearing flip-flops, was looking at her husband, or at the door and lobby area, or both, as she walked. She was not looking at her feet.

The immediate entryway to the hotel consisted of a scored concrete slab designed to resemble paving stones with a textured surface and mortar joints. It is thus uneven and slopes slightly away from the door. About the time Plaintiff's husband triggered the

motion-activated sliding glass doors to enter the hotel, Plaintiff slipped and fell in a pool of vomit. The vomit was clear with chunks of food, and was described by Plaintiff as "cool" to her touch. The vomit covered an area approximately two-and-a-half to three feet wide.

Unta Alexis Daniels was the night audit clerk at the Holiday Inn on the night that Plaintiff fell. He began his shift at 11:00 p.m. Daniels had no knowledge that anyone had vomited outside the entrance prior to Plaintiff's fall, and he could not remember whether anyone had entered the hotel in the two hours preceding Plaintiff's fall. After he was informed of Plaintiff's fall, Daniels used a water hose to wash the vomit away. One of Daniels's job duties was to periodically walk the grounds of the hotel, to identify and remediate, or establish adequate warning of, safety hazards. This responsibility included checking for safety hazards in the area where Plaintiff fell. During his eight-hour shift, Daniels would normally walk the grounds two or three times. However, he could not remember how many times he performed his check, or when he last did so, prior to Plaintiff's fall.

## IV. DISCUSSION

Plaintiff's complaint alleges that she slipped and fell in the vomit "due to Defendants' failure to maintain adequate lighting and operate the premises in a reasonably safe condition." Compl. (Doc. 1) at ¶ 12. She further alleges that the "pool of vomit was a hidden condition due to the low lighting maintained by Defendants." *Id.* Thus, she claims that Defendants were negligent and wanton in their failure to "maintain the premises in a reasonably safe condition for business invitees." Compl. (Doc. 1) at ¶ 14. In particular,

Plaintiff alleges that Defendants "negligently and/or wantonly" "allowed or created the dangerous condition by allowing Plaintiff to use the covered walkway at or near the front door when said Defendants knew or should have known that the walkway was poorly lit and thereby dangerous for the Plaintiff and other invitees to use;" "failed to inspect the premises in order to discover and correct the dangerous conditions existing there;" and "failed to take adequate precautions to warn the Plaintiff of said dangerous conditions." *Id.* at ¶ 15.

Defendants seek summary judgment on several bases. First, all Defendants argue that Plaintiff cannot produce "substantial evidence" that Defendants created the dangerous condition—meaning, presumably, the pool of vomit—that caused Plaintiff's injury, or that Defendants had actual or constructive knowledge of such condition. Defs.' Br. (Doc. 34) at 10-17. Defendants also argue that they are entitled to summary judgment because the dangerous condition—again, presumably the pool of vomit—that caused Plaintiff's injury was "open and obvious" to Plaintiff. *Id.* at 17-20. All Defendants also maintain that Plaintiff can present no facts in support of her claim of wantonness. *Id.* at 20-21. Separately, Defendant HHF argues that it is entitled to summary judgment because Plaintiff can produce no evidence that HHF, as a franchisor and licensor of the Holiday Inn brand, had any control over or responsibility for the supervision of hotel staff or maintenance of the grounds at the Holiday Inn in Dothan. HHF's Br. (Doc. 36) at 6-7. Finally, Defendant James R. Wilson argues that he is entitled to summary judgment because Alabama law excludes individual members of limited liability companies from liability for torts attributable to the LLC, and Plaintiff can present no facts showing that he individually

violated any duty owed to Plaintiff, or that he "authorized, directed, or actively participated" in any wrongful conduct that caused her injury. Wilson's Br. (Doc. 38) at 3-4.

Plaintiff argues that Defendants are not entitled to summary judgment because "Plaintiff has met her burden in proving sufficient evidence from which constructive notice of the hazard can be imputed to Defendant Wilson, LLC." Pl.'s Resp. (Doc. 42) at 15. Plaintiff also maintains that it is a question of fact for a jury to decide whether the dangerous condition that caused her injury was "obvious." *Id.* at 16-17.[2] The undersigned will below discuss the law governing this court's consideration of Defendants' motion and then examine the parties' arguments in support of their positions.

### A. Plaintiff has not produced sufficient evidence to present to the jury any negligence claim based upon Defendant's failure to inspect, remediate, or warn of the pool of vomit.

This court has had many occasions to apply Alabama's premises liability law in the context of a negligence claim arising out of a slip-and-fall occurring at a business. The court has previously observed as follows:

---

[2] In her response to Defendants' summary judgment motion, Plaintiff expressly "abandons her claims for wantonness while maintaining all other claims in this lawsuit." Pl.'s Br. (Doc. 42) at 18. In addition, although she does not make a similarly unequivocal declaration, it appears Plaintiff has also abandoned her claims against Defendants HHF and James R. Wilson. Plaintiff has not separately responded to those Defendants' motions for summary judgment, and her response to the motion filed on behalf of all Defendants focuses on the perceived strength of her negligence claims against Wilson, LLC. *See, e.g., id.* at 11 (titling first section of "Argument" "Constructive Notice to Defendant Wilson, LLC"); *id.* at 15 (quoted *supra*); *id.* at 18 (arguing "it is clear that there is substantial evidence supporting Plaintiff's claims of negligence on the part of Defendant Wilson, LLC"). Accordingly, Plaintiff has waived any argument against HFF's and James R. Wilson's separate motions for summary judgment, *see, e.g., Transamerica Leasing, Inc. v. Institute of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001), and those Defendants are entitled to summary judgment and dismissal of Plaintiff's claims against them.

> Under Alabama law, a store is "under a duty to exercise reasonable care to provide and maintain reasonably safe premises" for the use of customers. *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990). A store is not an insurer of a customer's safety and is liable only if it negligently fails to keep the premises in a reasonably safe condition. *Id.*

*Williams v. Wal-Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1319 (M.D. Ala. 2008). "For negligence to attach, the business must have 'had or should have had notice of the defect before the time of the accident.'" *Cook v. Wal-Mart Stores, Inc.*, 795 F. Supp. 2d 1269, 1273 (M.D. Ala. 2011) (quoting *Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So. 2d 1162, 1164 (Ala. 1992)). "This is so because '[t]he entire basis of a [business's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries.'" *Id.* (quoting *Fowler v. CEC Entm't*, 921 So. 2d 428, 432–33 (Ala. Civ. App. 2005) (internal quotation omitted). The court has further explained how a plaintiff claiming a business defendant has negligently failed to adequately maintain its premises may go about establishing the defendant's "superior knowledge" of a dangerous condition, like a spill, under Alabama law.

> Specifically, as this is a slip-and-fall case, [the plaintiff] may prove liability if she can establish one of three circumstances: (1) [the defendant] had actual notice that the puddle was on the floor; (2) the puddle had been on the floor for a sufficiently long period of time so that the store had constructive notice of the hazard; or (3) the store was otherwise delinquent for failing to discover and remove the puddle of water. *See Maddox*, 565 So. 2d at 15; *Cox v. Western Supermarkets, Inc.*, 557 So. 2d 831, 832 (Ala. 1989); *Richardson v. Kroger Co.*, 521 So. 2d 934, 935-36 (Ala. 1988).

*Williams*, 584 F. Supp. 2d at 1319. "However, if the plaintiff cannot prove notice in any of these ways, then 'that superior knowledge [of the business] is lacking . . . [and] the

9

[business] cannot be held liable.'" *Cook*, 795 F. Supp. 2d at 1273 (quoting *Fowler*, 921 So.2d at 432–33) (internal quotation omitted).

Plaintiff acknowledges that "[t]here are no allegations in this case that the Defendants created the pool of vomit in which Plaintiff fell[,]" and that "[t]here is also no evidence that the Defendants had actual notice of the vomit prior to Gibbs'[s] fall." Pl.'s Resp. (Doc. 42) at 11. Plaintiff thus concedes that "[t]he issue in this case is whether the Defendants had constructive notice of the pool of vomit." *Id.* Under Alabama law, "[a] storekeeper is charged with knowledge of a hazard if the evidence shows that the hazard has existed on the premises for such a length of time that a reasonably prudent storekeeper would have discovered and removed it." *Hale v. Kroger Ltd. Partnership I*, 28 So. 3d 772, 779 (Ala. Civ. App. 2009) (citing *S.H. Kress & Co. v. Thompson*, 267 Ala. 566, 570, 103 So. 2d 171, 174 (1957)). Importantly, "[d]irect evidence of the length of time the offending substance has remained on the floor is not required." *Id.* (citing *Cash v. Winn-Dixie Montgomery, Inc.*, 418 So. 2d 874, 875 (Ala. 1982)). Rather, "a jury may infer the length of time from evidence that the substance is 'dirty, crumpled, or mashed, or has some other characteristic which makes it reasonable to infer that the substance has been on the floor long enough to raise a duty on the defendant to discover and remove it.'" *Williams*, 584 F. Supp. 2d at 1319 (quoting *Cash*, 418 So. 2d at 876).

Plaintiff testified in her deposition that she did not know how long the vomit in which she fell had been on the concrete outside the door to the hotel. *See* Dep. of Debra K. Gibbs at 59:5, Ex. B to Pl.'s Resp. (Doc. 42-2) at 11. Thus, the only evidence Plaintiff has adduced about the amount of time the vomit was on the ground and posing a safety risk

to Defendant's invitees is her own testimony that it had cooled, she assumes from normal body temperature, to the point that it felt "cool" to her touch. *Id.* at 59:9-11. Plaintiff did not testify in any significant detail about where or how extensively her exposed skin came into contact with the vomit, and she admitted in her testimony that she does not "know how long it takes to cool down vomit." *Id.* at 59:11-12. Rather, she merely "assum[es] it'd take a little while." *Id.* at 59:14. Nevertheless, she argues that "[t]he fact that the vomit had become 'cool to the touch' is sufficient to create an inference that the vomit had been at the entrance to the Hotel long enough to" impute constructive notice to Defendant. Pl.'s Resp. (Doc. 42) at 12.

The undersigned does not agree. Plaintiff's testimony that a pool of vomit spread over a textured, uneven surface in an area approximately two to three foot wide, with no exposure to sunlight, felt "cool" to her does very little to permit a jury to reasonably infer that the vomit had been there sufficiently long to find that Defendant should be charged with constructive notice of its presence. Plaintiff provides no evidence, other than her own lay testimony, about the temperature of vomit when it is expelled from the body, or how long it might take vomit of the character she describes to "cool" given the conditions where, and when, the vomit was deposited. Plaintiff's lay testimony and observations are thus insufficient to appreciably narrow the window of time from when the vomit was expelled to her fall from, potentially, mere minutes to several hours. The low end of that range is insufficient, as a matter of law, to establish liability on behalf of Defendant, especially

considering the nature of Defendant's business and the time that the fall occurred.[3] Thus, the finder of fact would be required to engage in speculation in order to perform such narrowing for Plaintiff. As discussed above, this is not permitted under Alabama law. Accordingly, the undersigned concludes that the record before the court is lacking in the required "substantial" evidence tending to show how long the vomit remained on the concrete before Plaintiff fell. *See, e.g., Vargo v. Warehouse Groceries Mgmt., Inc.*, 529 So. 2d 986, 987 (Ala. 1988) (concluding, under Alabama's old "scintilla" standard, that the plaintiff offered insufficient evidence to survive summary judgment where she merely testified that the puddle of water in which she slipped, which was positioned in front of an ice machine, "looked like it had been there for a while"). *See also Cummings v. Target Stores, Inc.*, No. 2:12-cv-2798-JHH, 2014 WL 3889953, at *5-*6 (N.D. Ala. Aug. 5, 2014) (finding that the plaintiff offered insufficient length-of-time evidence where she testified that the puddle of water in which she slipped, which was positioned near a fountain drink vending machine, was a mix of water and melting ice). Instead, Plaintiff has at most offered only a "scintilla" of evidence in support of this essential element of proving her claim. As has been discussed previously, where a plaintiff offers only a "scintilla" of evidence in support of an essential element in support of her claim, summary judgment in

---

[3] As this court has previously observed, Alabama courts have repeatedly found that, even in contexts with multiple employees in the vicinity of a spilled liquid or substance who are trained to identify and remediate such hazards, a few minutes is simply insufficient to impute constructive notice to the defendant. *See Knox v. U.S.*, 978 F. Supp. 2d 1203, 1212 (M.D. Ala. 2013) (collecting cases).

favor of the defendant is appropriate. Accordingly, Defendant is entitled to summary judgment on any argument that Defendant had constructive notice of the pool of vomit.

Alabama law recognizes that, in the context of a hazardous substance or spill, a plaintiff may establish a defendant's superior knowledge of the hazard, thereby triggering the defendant's duty to remedy the hazard or provide adequate warning, by showing "that the defendant was delinquent in not discovering the foreign substance." *Hale*, 28 So. 3d at 779 (quoting *Winn-Dixie Store No. 1501 v. Brown*, 394 So. 2d 49, 50 (Ala. Civ. App. 1981)). A plaintiff may satisfy this prong of the negligence test by showing that the defendant's "inspection procedure was inadequate or that it was performed inadequately on the day of his fall." *Id.* at 783. *See also Knox*, 978 F. Supp. 2d at 1212. Plaintiff arguably is attempting to show such an inadequate performance of inspection procedures in this case. *See* Pl.'s Resp. (Doc. 42) at 12 (noting Daniels's testimony about his responsibility to "inspect the area where Plaintiff fell several times each shift" and, further, that he could not "recall if he performed these safety check of the area where Plaintiff fell during his shift prior to her fall"); *id.* (arguing that "vomit had been at the entrance to the Hotel long enough to have been discovered by Daniels *if he had conducted his safety inspections as he was supposed to*") (emphasis supplied); *id.* at 15 ("Plaintiff has also produced evidence that the Defendant failed to make inspections as required by its normal operational procedure.").

To the extent that, in the language of *Hale*, Plaintiff is indeed arguing that she has established a *prima facie* negligence case because Defendant's otherwise adequate "inspection procedure" "was performed inadequately on the day of [her] fall[,]" 28 So. 3d

at 783, such argument is unavailing.  In *Tucker v. Wal-Mart Stores, Inc.*, 89 So. 3d 795, 801 (Ala. Civ. App. 2012), the Alabama Court of Civil Appeals circumscribed the meaning and import of its language in *Hale* and the prior case upon which it heavily relied, *Brown*:

> [The plaintiff] reads *Brown* and *Hale* as establishing that the negligence of a storekeeper may be proven solely by evidence indicating that the storekeeper failed to establish an adequate inspection procedure or by evidence indicating that the employees of the storekeeper failed to perform an adequate inspection of the premises in accordance with the policies of the storekeeper. That is not a correct interpretation of the holdings of those cases. In both cases, this court noted that the appellant had failed to produce any evidence of an inadequate inspection procedure or an inadequate performance of an inspection procedure, which, obviously, would defeat any claim of delinquent inspection, but *in neither case did the court hold that proof of an inadequate inspection procedure or of inadequate performance of an inspection procedure, alone, would have defeated the motion for a summary judgment.*

89 So. 3d at 800-01 (emphasis supplied).  Instead, according to the Court of Civil Appeals, "a customer asserting delinquent inspection on the part of a storekeeper must still prove that the foreign substance was on the floor for a sufficient period such that an adequate inspection would have discovered it.  Nothing in *Brown* or *Hale* alters that rule of law." *Id.*  Here, because, as set forth above, Plaintiff has offered insufficient evidence to show that the vomit was on the ground for a sufficient period that an adequate inspection by Daniels would have discovered it, Plaintiff cannot establish Defendant's negligence via Daniels's alleged delinquent or inadequate inspection.

Accordingly, because Plaintiff has failed to produce substantial evidence that the vomit in which she slipped had been on the ground for a sufficient period of time to impute constructive notice of its presence to Defendant, she has not demonstrated that there is a material dispute of fact to be resolved by a jury.  Thus, Defendant is entitled to summary

judgment on Plaintiff's claim of negligence grounded in Defendant's failure to maintain its premises by eliminating the pool of vomit or providing her with adequate warning of its presence.

### B. Defendant is not entitled to summary judgment based on Plaintiff's separate theory of negligence—that Defendant provided inadequate lighting such that the pool of vomit constituted a hidden danger.

Plaintiff's complaint makes clear that Plaintiff is alleging that Defendant was negligent not just in its failure to remedy or provide warning of the spilled vomit, but also because of Defendant's "failure to maintain adequate lighting and operate the premises in a reasonably safe condition." Compl. (Doc. 1) at ¶ 12. Plaintiff alleges that the "vomit was a hidden condition due to the low lighting maintained by Defendants." *Id.* Thus, she claims, Defendant breached its duty owed to Plaintiff to maintain its premises in a reasonably safe condition by "allowing Plaintiff to use the covered walkway at or near the front door when . . . Defendant[] knew or should have known that the walkway was poorly lit and thereby dangerous for Plaintiff and other invitees to use[.]" *Id.* at ¶ 14(b).

Although the majority of the parties' briefing concerns whether Defendant had constructive notice of the pool of vomit and whether that specific hazard was "open and obvious" to Plaintiff, Defendant appears to recognize that Plaintiff's complaint presents the alleged inadequate lighting as a distinct theory of Defendant's negligence. *See* Defs.' Br. (Doc. 34) at 17. To that end, Defendant argues that it is entitled to summary judgment because Plaintiff "presents no evidence that the lighting was inadequate other than her own vague and unsupported testimony." *Id.* Defendant further submits that the "undisputed facts establish that the lighting and illumination at the location of Plaintiff's alleged fall

event exceeded applicable safety standards." *Id.*[4] Accordingly, Defendant argues, "Plaintiff's unsupported assertions are insufficient to raise a triable issue as to the sufficiency of lighting," and, therefore, Defendant is entitled to summary judgment on any claim of negligence premised on Defendant's failure to provide adequate lighting. *Id.*

Defendant obviously had actual or constructive notice of the allegedly deficient lighting of the entryway area. Thus, the court must determine whether Plaintiff has submitted substantial evidence that Defendant maintained inadequate lighting in the covered entryway where Plaintiff fell. Plaintiff's evidence in this regard consists of the deposition testimonies of the witnesses who observed the pool of vomit under the lighting conditions existing that night. Plaintiff and her husband both testified that the lighting conditions made it difficult to see the vomit. Plaintiff maintained that the area was so dimly lit that she probably would not have seen the vomit even if she had been looking down at the ground while she approached the vomit. Dep. of Debra Gibbs at 54:5-8, 60:13-16 (Doc. 42-2 at 12). Plaintiff's husband also testified that it was dark in the area where Plaintiff fell. Dep. of Barry Gibbs (Doc. 42-1) at 24:7-8, 46:15-20, 59:7-12. Further, both Plaintiff and her husband testified that they were looking into the hotel lobby because that area was

---

[4]  In support, Defendant relies chiefly on the report of its retained expert, a structural engineer, who was "asked to evaluate the lighting and construction of the entrance" area at the Holiday Inn. *See* Affidavit of Charles E. Whitley, P.E., at ¶¶ 2, 4, Ex. F to Def.'s Br. (Doc. 34-6). Defendant's expert used a light meter to measure lighting levels at twenty-five points in a two-foot grid centered on the spot where Plaintiff indicated that she fell. *Id.* at ¶ 9. According to the expert, the light readings all measured between 1.3 and 3.0 footcandles, which exceeds the requirements of both the International Building Code, which has been adopted by the City of Dothan, and the National Fire Protection Association 101 Life Safety Code, which is referenced in the International Building Code. *Id.* at ¶¶ 9-12. Thus, the expert concludes, "[t]here is no defect in the illumination of the entrance area to the Holiday Inn." *Id.* at ¶ 12.

16

more brightly illuminated than was the entryway.  Doc. 42-2 at 46:21-47:3 (testimony of Debra Gibbs); Doc. 42-1 at 24:7-15, 46:15-47:10, 59:7-19 (testimony of Barry Gibbs). Daniels's testimony is generally corroborative of Plaintiff's and her husband's testimonies about the vomit being difficult to see due to the lighting conditions.  Indeed, he affirmed that, had he not gone out to specifically look for the vomit after being informed of it, he would not have seen it.  Dep. of Unta Daniels at 34:18-35:3 (Doc. 42-3).  Thus, of the three witnesses who actually saw the vomit on the ground that evening, all agree that it was difficult to see in the lighting conditions prevailing at that time.

The undersigned concludes that the testimonies of the lay witnesses who observed the lighting conditions on the night of Plaintiff's fall constitute substantial evidence sufficient to present to the jury Plaintiff's claim that Defendant negligently failed to provide adequate lighting.  Although Defendant has presented probative and compelling evidence tending to show that the lighting conditions were adequate as a matter of local building codes, Defendant has not provided any case law showing that a business invitor is insulated from liability for failure to provide adequate lighting merely because it has complied with local building codes.[5]  Nor has Defendant explained how the testimonies of Plaintiff, her husband, or Daniels are "unsupported."  All witnesses who observed the conditions that night testified that the lighting made it difficult to see the vomit.  These witnesses'

---

[5] Indeed, such an argument would run counter to the history and one of the intended functions of tort litigation, which has often proven to be a catalyst for change in areas like improving the safety of buildings and the design and manufacture of products. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 578-79 (2009) (discussing role of common-law tort suits as a "complementary from of drug regulation").

testimonies are not "unsupported" merely because Plaintiff has not provided expert testimony rebutting that of Defendant's expert. Ultimately, the adequacy of the lighting, as a matter of the duty Defendant owed to Plaintiff, is a question of fact for the jury to resolve based upon the testimonies of all fact witnesses and any expert testimony that the court permits the jury to consider. *See Strickland*, 692 F.3d at 1154. For purposes of the instant summary judgment motion, however, even if the court believes that, in light of the presumed testimony of Defendant's expert, Plaintiff is unlikely to succeed on this claim, or even to survive a motion for judgment as a matter of law after the close of the evidence, in the exercise of due caution the court should permit the matter "'to proceed to a full trial.'" *Cook*, 795 F. Supp. 2d at 1275 (quoting *Anderson*, 477 U.S. at 255).[6]

Defendant also argues that, "[t]o the extent Plaintiff claims the lighting or illumination at the entranceway rather than or in conjunction with the vomit substance itself caused her to fall, such conditions . . . were also open and obvious to Plaintiff." Defs.' Br. (Doc. 34) at 20. Alabama courts employ an objective standard when determining whether a safety hazard is open and obvious. *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 741-42 (Ala. 2009) (citation omitted). Thus, the court is concerned with whether the hazard "should have been observed, not whether in fact it was consciously appreciated[.]" *Id.*

---

[6] In addition, there may be a factual dispute about whether or not the lighting conditions changed between the night of Plaintiff's fall and the time Defendant's expert conducted his evaluation. Although Defendant's property manager testified that the lighting conditions did not change, Dep. of Kimberly Nicole Brown at 87:10-12 (Doc. 34-4), Plaintiff's own testimony arguably implies that it was darker than is depicted in the photographs she reviewed at her deposition. *See* Pl.'s Dep. (Doc. 42-2) at 54:5-6 ("It was dark. Like I said, it was dimly lit. It wasn't lit up like that."). If there is indeed such a dispute, it is for the jury to hear any pertinent witnesses' testimonies, make credibility determinations, and render any relevant factual findings.

(internal quotation and citation omitted).  In other words, a premises owner has no duty to warn its invitees about open and obvious safety hazards of which the invitees are aware, or should be aware, through the exercise of reasonable care.  *Id.* at 742 (internal quotation and citation omitted).

Defendant's "open and obvious" argument is an affirmative defense to Plaintiff's claim of negligence, for which Defendant bears the burden of proof.  *Id.* (citation omitted). Defendant's offer of proof at the summary judgment stage appears to consist of its argument that "Plaintiff had previously observed [the lighting conditions in the entryway], or at least had the open opportunity to observe those conditions, as she entered and exited the hotel on prior occasions, including several times the evening of her alleged fall."  Defs.' Br. (Doc. 34) at 20.

The undersigned concludes that there remains disputed issues of material fact regarding whether the alleged inadequate lighting presented an open and obvious safety hazard of which Plaintiff should have been aware through the exercise of reasonable care. At the outset, the undersigned notes that Defendant has provided no case law tending to show that the opportunity to observe allegedly inadequate partial lighting renders such condition open and obvious.  The undersigned thus finds little difficulty in concluding that, in this instance, the alleged inadequate lighting was not so apparent that the jury should be precluded from resolving whether it was "open and obvious," or whether Plaintiff exercised reasonable care in walking and keeping a lookout for hazards.[7]  It is undisputed that it was

---

[7] Although not presented in conjunction with Defendant's brief argument about the adequacy or open and obvious nature of the lighting, Defendant has argued that Plaintiff did not see the hazard,

dark outside, and that the entryway was lit by overhead lights and lighting from within the hotel. Even if this lighting was adequate as a matter of local building codes or industry standards, it is apparent from the exhibits provided by the parties that the lighting was only partial. *See, e.g.,* Def.'s Supp. (Doc. 40-1) at 39-42 (color photographs depicting nighttime lighting of entryway). In other words, the area was neither totally dark nor brightly lit.

While Alabama cases have indicated that total darkness presents an open and obvious danger, in a case involving partial lighting, summary judgment generally is not appropriate in circumstances where the character or sufficiency of the light is at issue. As the Alabama Supreme Court explained in *Ex parte Kraatz*, 775 So. 2d 801, 804 (Ala. 2000):

> [p]artial or poor light, like that in the case before us, could mislead a reasonably prudent person into thinking that he or she would be able to see and to avoid any hazards. The variable factors which make openness-and-obviousness under partial or poor light conditions a fact question not appropriate for resolution by summary judgment are direction, level, color, diffusion, shadows, and like qualities of light, as well as the other physical features of the scene.

---

not because of any lighting defect, but because she was distracted. In support, Defendant points to Plaintiff's own prior admission to an insurance investigator that she was "cutting up" and not "paying attention" while she approached the hotel. However, Plaintiff clarified in her deposition testimony that she simply was not "paying attention to [her] feet and the ground because [she] was walking and looking straight ahead[.]" Debra Gibbs Dep. At 47:4-12 (Doc. 42-2). Plaintiff's deposition testimony thus demonstrates that issues of material fact remain with regard to whether or not she was exercising reasonable care in approaching the building, or whether she was distracted due to reasons unrelated to her purpose for being on Defendant's premises. *See, e.g., Bud's Outlet v. Smith*, 781 So. 2d 219, 222 (Ala. Civ. App. 2000) (reversing trial court's denial of post-verdict motion for judgment as a matter of law where the wheelchair over which the plaintiff tripped had previously been observed by the plaintiff, but, at the time of her fall, the plaintiff was distracted by her relatives). Ultimately, it is for the jury to hear Plaintiff's testimony, along with any prior statement impeachment evidence Defendants may offer, consider her credibility, and determine whether Plaintiff's own conduct or manner of walking was unreasonable or was the cause of her accident. *See Strickland, supra.*

Thus, the jury should be allowed to consider both the fact witness and expert witness testimonies to determine whether the lighting provided by Defendant presented an open and obvious hazard considering, *inter alia*, the level and color of the light, how it was diffused, whether there were shadows, and how the light reflected on the surface of the entryway.

In sum, the undersigned finds that Plaintiff has offered sufficient evidence of inadequate lighting to present a triable issue of fact, and that, therefore, material disputes of fact preclude an award of summary judgment on Defendant's affirmative defense that the alleged inadequate lighting conditions presented an open and obvious hazard for which Defendant had no duty to warn Plaintiff. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's claim of negligence based on alleged inadequate lighting is due to be denied.

### C. Plaintiff is not entitled to any adverse inference on the basis of Defendant's alleged spoliation of evidence.

Plaintiff argues that Defendant is guilty of spoliation of evidence. In particular, Plaintiff faults Defendant for failing to preserve video footage of the lobby and entryway from the night of Plaintiff's fall. *See* Pl.'s Br. (Doc. 42) at 15. Defendant counters that there was never any video footage taken of the area where Plaintiff fell and that, because she discarded the flip-flops she was wearing when she slipped and fell, Plaintiff's "unclean hands" should preclude her from maintaining a spoliation claim against Defendants. Defs.' Reply (Doc. 44) at 16-17.

This court addressed spoliation of evidence in *Williams*:

> "[A]n adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997). "Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." *Vick v. Texas Employment Com'n*, 514 F.2d 734, 737 )[5]th Cir. 1975) (quoting McCormick, Evidence § 273 at 660-61 (1972), 31 A C.J.S. Evidence § 156(2) (1964)); the party claiming spoliation must present "probative evidence" that the relevant materials were purposely lost or destroyed." *Bashir*, 119 F.3d at 931.

584 F. Supp. 2d at 1321-22.

Here, Plaintiff appears to argue that she is entitled to the benefit of an adverse inference against Defendant because Defendant James R. Wilson "and the manager, Kimberly Brown, both agreed they allowed the video footage of the lobby and the entrance doors for the night of Plaintiff's injury to be erased." Pl.'s Br. (Doc. 42) at 15. Plaintiff maintains that this footage would have revealed when the last guest entered or exited the hotel prior to Plaintiff's fall, as well as "exactly what the night desk clerk[,] Unta Daniels[,] had been doing prior the Gibbs['s] injury" and "whether he ever performed the inspections he was supposed to do several times every shift." *Id.*

Defendant argues, "no cameras are located on the exterior of the hotel and no cameras were positioned to show the area where Plaintiff claims to have fallen." Defs.' Reply (Doc. 44) at 13-14 (citing Brown Dep. (Doc. 44-3) at 146:14-147:4). Furthermore, Defendant argues that it cannot be found responsible for the intentional destruction of evidence because the letter Plaintiff's then attorney sent Defendant requesting the preservation of video evidence from the night of Plaintiff's fall referenced a separate, unrelated fall occurring on a different date at a Waffle House location in Florida. *Id.* at 14 (quoting Letter from Charles Hobbs, Doc. 44-4). Thus, Defendant maintains, with regard

to any video of the lobby area, "[p]er the hotel's standard operating procedure, the video was taped over in the regular course of business without any affirmative or purposeful undertaking by the Defendants or by any agent of the Defendants." *Id.* at 14-15.

Plaintiff is not entitled to the benefit of any adverse inference due to Defendant's failure to preserve video evidence. First, considering the specific request that was made of Defendant to preserve evidence of a fall occurring at a Waffle House, the undersigned does not find sufficient evidence of Defendant's culpability in "purposely" destroying the video evidence. Second, Plaintiff has not presented any evidence, especially considering the contrary testimony of the hotel manager, that there ever was any video footage of her fall or of the area where she fell. *See Williams*, 584 F. Supp. 2d at 1322 (refusing to draw adverse inference against the defendant because the plaintiff "has not provided probative evidence that the tapes . . . would have recorded the area in question"). Third, to the extent Plaintiff argues that the tapes could have indicated when persons entered or exited the hotel or what Daniels was doing in the hours before Plaintiff's fall, such arguments are irrelevant. Because there is no evidence that the tapes would have recorded anyone actually vomiting outside the hotel door, it is immaterial whether the tapes would have shown persons coming and going in the hours before Plaintiff's fall. To the extent the tapes might have depicted Daniels just sitting at the desk, conducting no security checks whatsoever during his entire time on duty, without substantial evidence tending to show that the vomit was actually on the ground long enough that it should have been noticed in the course of an adequate inspection, it simply does not matter that Daniels may have been delinquent in his inspection. Finally, Plaintiff has not argued, and the undersigned is unable to conceive of

23

such an argument, that the tapes would have somehow advanced Plaintiff's theory of negligence premised on inadequate lighting. Thus, no adverse inference against Defendant based upon the purported spoliation of evidence is warranted at this time.

## V.    CONCLUSION

For all of the foregoing reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Defendants' Motion for Summary Judgment (Doc. 33) be GRANTED as to Plaintiff's claim of wantonness as to Defendant Wilson, LLC, but DENIED as to Plaintiff's claim of negligence against Wilson, LLC, based upon the alleged inadequate lighting of the entryway. The undersigned further RECOMMENDS that the separate Motions for Summary Judgment (Docs. 35 & 37) filed by Defendants Holiday Hospitality Franchising, LLC, and James R. Wilson, respectively, be GRANTED and that Plaintiff's claims against those Defendants be DISMISSED in their entirety, with prejudice. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **April 25, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on

24

appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 11th day of April, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE